## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

**UNITED STATES OF AMERICA,**   *

                                  *

                                  *

**v.**                             * **CASE NO.  2:06cr198**

                                  *

**RONALD MCQUEEN**             *

## MOTION TO SUPPRESS

COMES NOW the Defendant, Ronald McQueen , by and through his undersigned counsel, Susan G. James, and pursuant to Rules 12 and 41 of the Federal Rules of Criminal Procedure, and the Fourth Amendment to the United States Constitution, and moves this court to suppress any items seized during the searches of 8833 Ashland Park Drive, Montgomery, Alabama,  2200 Windsor Avenue, Montgomery, Alabama, a tan Saturn vehicle, and statements made by McQueen during or subsequent to the search.  McQueen requests that the court prohibit the government from introducing any statement made by McQueen  or any items seized as a result of the searches.

## INTRODUCTION

The drug and non-drug evidence seized in this case to be used by the government in this prosecution was seized as a result of two searches .  These searches included searches of residences McQueen with which he was known to

be associated  and a vehicle he was driving.  Subsequent to the searches ,and after

his arrest, McQueen made statements to law enforcement assuming responsibility

for all the contraband obtained from the searches .

As McQueen best understands the governments case, an informant was

working with law enforcement and advised them of  McQueen's alleged drug

activity.   Evidence in discovery reveals that the informant professes to have

observed the defendant in possession of drugs during the previous month.

On July 26, 2006 law enforcement directed the confidential informant to

contact McQueen to conduct a drug transaction.  The two were allegedly supposed

to meet on Cherry Street.

Law enforcement set-up surveillance.  The police were aware McQueen had

outstanding traffic warrants.  A stop was executed on the vehicle in which

McQueen was traveling. Pursuant to a search of the vehicle approximately two

kilograms of cocaine and  27.25 grams of ecstasy were seized.  The ecstasy was

purportedly removed from McQueen's  pocket.

 A search warrant was then obtained  for 8833 Ashland Park Drive, a

residence believed to be occupied by McQueen and his girlfriend Terra Aaron.

During the document and currency search drugs were located.  It is reported the

search was stopped until the search warrant could be amended to include drugs

2

and signed by a municipal judge.

Around the same time law enforcement sought a consent search of 2200 Windser, McQueen's mother's house.  It is reported that McQueen's uncle ,Larry Mitchell, gave consent to search the premises.  During the search drugs and non-drug evidence was seized.

After his arrest McQueen  gave a statement to law enforcement assuming responsibility for all of the contraband law enforcement found during the searches.

McQueen seeks suppression of all items seized from 8833 Ashland Park Drive, 2200 Windsor Avenue, a tan Saturn vehicle, and any and all statements made by McQueen prior to and after his arrest.

McQueen raises the following argument in favor of suppression.

## ARGUMENT

## A.  THE SEARCH WARRANT WAS INVALID AS THE INFORMATION USED TO AUTHORIZE IT WAS STALE AND THE INFORMANT UNRELIABLE

A variety of drug and non-drug evidence was seized from the 8833 Ashland Park Drive location subsequent to an unlawful search and seizure of a vehicle McQueen was driving on July 26, 2006.  A cooperating informant had stated he had seen drugs at the Ashland Park Drive location the previous month.

We have developed a staleness doctrine in the context of probable cause which requires that the information supporting the government's application for a warrant must show that probable cause exists at the time the warrant issues. *United States v. Bervaldi*, 226 F.3d 1256, 1264 (11th Cir. 2000) The officers suggestion that the informant was reliable is insufficient to support the acquisition of the warrant.

## B. POLICE LACKED PROBABLE CAUSE TO STOP MCQUEEN AND SEARCH THE TAN SATURN

Defendant argues that the police lacked probable cause to stop his vehicle and that they acted on a hunch and mere suspicion.

McQueen alleges that the search of the vehicle on July 26, 2006 was illegal and that any evidence found in the vehicle was illegally seized and should be suppressed. Furthermore, due to the illegal search and seizure any statement he gave should be suppressed as fruit of the poisonous tree.

The Fourth and Fourteenth Amendments are implicated in this case because stopping an automobile and detaining its occupants constitute a seizure within the meaning of those Amendments. *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979). A traffic stop is a seizure within the meaning of the Fourth Amendment. A routine traffic stop is only a limited form of seizure, it

4

is more analogous to an investigative detention than a custodial arrest. *United States. v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001), cert. Denied, 534 U. S. 830, 122 S. Ct. 73, 151 L. Ed. 2d 38 (2001).

The stop may have been pretextual.  But under *Whren v. United States*, a traffic stop, even if pretextual, does not violate the Fourth Amendment if the officer making the stop has probable cause to believe that a traffic violation has occurred.  This is an objective test based on the facts known to the officer at the time of the stop, not on the motivations of the officer in making the stop.  On the other hand, if it is clear that what the police observed did not constitute a violation of the cited traffic law, there is no objective basis for the stop, and the stop is illegal. *United States v. Escalante*, 239 F.3d 678, 680-81 (5th Cir. 2001).

Law enforcement officers may detain a person briefly for an investigatory stop if they have a reasonable, articulable suspicion based on objective facts that the person has engaged in, or is about to engage in, criminal activity.  The 'unreasonable suspicion' must be more than 'inchoate and unparticularlized suspicion or hunch.   *United States v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)).  Reasonable suspicion is determined from the totality of circumstances and collective knowledge of the officers. *United States v. Acosta*, 363 F.3d 1141, 1145 (11th Cir. 2004).Whether reasonable

suspicion existed at the time [of the investigatory stop] is a question of law to be determined ultimately by judges, not policemen....[T]he question...is not whether a specific arresting officer...actually and subjectively had the pertinent reasonable suspicion, but whether, given the circumstances, reasonable suspicion objectively existed to justify such a search. *Hicks v. Moore*, 422 F.3d 1246, 1252 (11th Cir. 2005) (citing *Evans v. Stephens*, 407 F.3d 1272, 1280 n.9 (11th Cir. 2005) (en banc)).

**C**. **THE SEARCH OF 8833 ASHLAND AVENUE, MONTGOMERY, ALABAMA WAS ILLEGAL**.

The police obtained a warrant for documents and currency despite the fact that McQueen had already been stopped and found in possession of drugs within the vehicle he was driving and on his person. Despite this fact the warrant only sought non-drug evidence. During the search controlled substances were found. McQueen contends that stopping the search and amending the warrant at that point did not cure the Fourth Amendment violation.

Seizure of personal property is *per se* unreasonable unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized. *United States v. Place*, 462 U.S. 696, 701 (1983). As the Supreme Court has consistently noted, evidence

obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure. *Weeks v. United States*, 232 U.S. 383 (1914); *Mapp v. Ohio*, 367 U.S. 643 (1961). This exclusionary rule includes the "fruits" of such illegal conduct. *Wong Sun v. United States*, 371 U.S. 471 (1963).

The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one particularly describing the place to be searched and the persons or things to be seized.  The manifest purpose of this particularity requirement was to prevent general searches.  By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.  *Maryland v. Garrison*, 480 U. S. 79, 84, 107 S.Ct. 1013, 94 L.Ed. 2d 72 (1987).

### D. **THE SEARCH OF 2200 WINDSER AVENUE WAS ILLEGAL.**

The consent obtained from Larry Mitchell, McQueen's uncle, was limited in scope to his bedroom only. The scope of the search exceeded the bounds of the limited consent.  Drug and non-drug evidence was seized.  The search involving the seizure of the drug evidence was overly broad and warrantless.

7

The evidence reveals that McQueen has and does stay at his mother's residence 2200 Windser Avenue.

The Supreme Court has stated that "status as an overnight guest is alone enough so that [Mr. McQueen] had an expectation of privacy in the home that society is prepared to recognize as reasonable." And thus such a guest has standing to challenge a warrant less search. *Minnesota v. Olson*, 495 U. S. 91, 96, 110 S.Ct. 1684, 1688 (1990). See also *United States v. Thomas*, 372 F.3d 1173, 1176 (10th Cir. 2004) (Defendant, as an overnight guest, had standing to challenge warrantless search of the apartment owned by his aunt and uncle). Therefore, Mr. McQueen has standing to challenge the validity of the search.

The premise of common authority to consent to a search rests on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection of his own right and that the others have assumed the risk that one of their number might permit the common areas to be searched. *United States v. Matlock*, 415 U.S. 164, 171 n.7, 94 S.Ct. 988, 39 L.Ed. 2d 242 (1974)    A search is impermissible when an officer does not conform to the limitations imposed by the person giving consent... *United States v. Zapata*, 180 F.3d. 1237, 1242-43 (11th Cir. 1999).

**E**. **MCQUEEN'S STATEMENTS SHOULD BE SUPPRESSED.**

The exclusionary rule also prohibits the introduction of derivation evidence, both tangible and testimonial, that is the produce of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search. *Murray v. United States,* 487 U.S. 533, 536-37, 108 S.Ct. 2529, 101 L.Ed. 2d 472 (1988).

The government cannot violate the Fourth Amendment-in the only way in which the government can do anything; namely through its agents-and use the fruits of such unlawful conduct to secure a conviction. Nor can the government make indirect use of such evidence for its case, or support a conviction on evidence obtained through leads from unlawful obtained evidence. All these methods are outlawed, and convictions obtained by means of them are invalidated, because they encourage the kind of society that is obnoxious to free men. *Walder v. U.S.* 347 U.S. 62, 64-65, 74 S.Ct. 354, 98 L.Ed. 503 (1954).

Respectfully submitted,

s/Susan G. James
SUSAN G. JAMES
Attorney at Law
600 South McDonough Street
Montgomery, Alabama 36104
Phone: (334) 269-3330
Fax: (334) 834-0353
E-mail: sgjamesandassoc@aol.com
Bar No:ASB79576J64S

CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Tommie Brown Hardwick
Assistant United States Attorney
P.O. Box 197
Montgomery, Alabama, 36101

Respectfully submitted,

s/Susan G. James
SUSAN G. JAMES
Attorney at Law
600 South McDonough Street
Montgomery, Alabama 36104
Phone: (334) 269-3330
Fax: (334) 834-0353
E-mail: sgjamesandassoc@aol.com
Bar No: JAM012

10